[No. 1607.]

## THE STATE OF NEVADA, RESPONDENT, *v.* LESLIE E. DOUGLAS, APPELLANT.

GRAND LARCENY—INDICTMENT—DUPLICITY—ROBBING DIFFERENT OWNERS—SUFFICIENCY — ACCOMPLICE — COCONSPIRATOR — TESTIMONY — ADMISSIBILITY — INSTRUCTIONS—APPEAL—BILL OF EXCEPTIONS—RECORDS. 1. An indictment, charging defendant with stealing and driving away particularly described cattle of four different owners, charges but one larceny, and is not duplicitous, so as to require the state to elect on which count it stands.

2. An indictment charging defendant with stealing and driving away particularly described cattle of four different owners is sufficient under criminal practice act, sec. 243, subd. 6 (Comp. Laws, 4208), declaring an indictment sufficient when the act charged is clearly and distinctly set forth in ordinary and concise language, without repetition, so as to enable a person of common understanding to know what is intended.

3. Where, in a prosecution for larceny which was planned and executed by defendant, it appeared that he had suggested it to a witness who had been appointed deputy sheriff, and was acting as such, without defendant's knowledge, when invited to join in commission of the theft, and keeping the sheriff fully informed as to what was transpiring between him and defendant, such witness was neither a coconspirator nor an accomplice.

4. An accomplice is not incompetent to give testimony, but the weight thereof is for the jury, under proper instructions, subject to the restriction of Comp. Laws, 4330, providing that a conviction cannot be had on the uncorroborated testimony of such accomplice.

5. Where, in a prosecution for larceny, it appeared that defendant alone planned and carried out the theft, which he invited one acting as deputy sheriff without his knowledge to participate in, which deputy kept the sheriff informed as to what was transpiring between him and defendant, it was not error to refuse to instruct that officers of the law should never encourage and assist parties in order to arrest and have them punished for so doing, and that the officers, instead of laying a plan to have defendant arrested for the crime as charged, should have taken all steps in their power to prevent the commission of the offense, since there was no evidence on which to base such instruction.

6. Where instructions are not embodied in the bill of exceptions, they are not part of the record, and objections thereto cannot be considered.

APPEAL from the Second Judicial District Court, Churchill County; *B. F. Curler*, Judge.

Leslie E. Douglas was convicted of grand larceny, and appeals.  **Affirmed.**

The facts sufficiently appear in the opinion.

. *Torreyson & Summerfield* and *George D. Pyne*, for Appellant:

I.  The court will observe that the indictment does not allege that the taking was at the same time and same place, or that it was the same act, and there is no testimony to show that they were taken at the same time and same place.  On the contrary, the ranches upon which these individuals live, whose cattle are alleged to have been stolen, are from two to ten miles apart, and no cattle were found in the possession of defendant.  Only certain hides, with certain brands were found in the possession of the defendant.  None of these hides were the property of Thelan or Douglas or Kaiser, and it cannot be urged that the defendant can be convicted of stealing Thelan's cattle or the cattle of Douglas or Kaiser, upon the theory that the hides found in his possession belonged to cattle owned by Wightman, and the court erred in assuming in its instructions to the jury that the property alleged in the indictment to have been taken by the defendant was the property of any of the individuals named in the indictment.

II.  An information charging in one count the larceny of two distinct articles of personal property belonging to different persons, without alleging that the property of the two owners was stolen at the same time and by the same act, is bad for duplicity.   (*Joslyn* v. *State*, 128 Ind. 160; *Phillips* v. *State*, 85 Tenn. 551; *Nichols* v. *Commonwealth*, 78 Ky. 180-2; *State* v. *English*, 14 Mont. 399, 402; *People* v. *Albrey*, 49 Colo. 452; *People* v. *Mayors*, 65 Cal. 138; *State* v. *Thurston*, 2 McMul. (S. C.) 382; *State* v. *Nelson*, 8 N. H. 163; *Com.* v. *Andrews*, 2 Mass. 409.)

III.  It is equally well settled that if, on the same expedition, there are several distinct larcenous takings, as taking the goods of one person at one place, and afterwards taking the goods of another at another place, and so on, as many

crimes are committed as there are several and distinct takings. (*State* v. *Emery*, 68 Vt. 109, 112.)

IV. The testimony of the witness Joe King should have been stricken out upon the ground that he was a coconspirator, and that, after the conspiracy has come to an end, whether by success or by failure, the admissions of one conspirator, by way of narrative of past facts, are not admissible in evidence against others. (*Logan* v. *U. S.*, 144 U. S. 309; *Williams* v. *State*, 40 Tex. Cr. Rep. 569; *People* v. *Davis*, 56 N. Y. 95; *Heine* v. *Com.*, 91 Pa. St. 145; *State* v. *Larkin*, 49 N. H. 39; *People* v. *Aleak*, 61 Cal. 138.) After the common enterprise is ended, whether by accomplishment or abandonment is not material, no one is permitted by any subsequent act or declaration of his own to affect the others. (*State* v. *Ross*, 29 Mo. 50; *Phillips* v. *State*, 6 Tex. Cr. App. 383; *State* v. *Duncan*, 64 Mo. 266.)

V. Sheriffs should never encourage and assist parties to commit crime in order that they may arrest and have them punished for so doing; it is their duty to prevent crime and "nip it in the bud," instead of lending aid and encouragement in carrying it out. (*Guyer* v. *State*, 37 Tex. Cr. Rep. 490; *Saunders* v. *People*, 38 Mich. 218.) "In this case the sheriff, instead of laying a plan to have the crime carried out, should have taken steps to prevent it." (37 Tex. 490.)

*William Woodburn*, Attorney-General, and *Ed T. Dupuis*, for Respondent:

I. The demurrer to the indictment was properly overruled. The indictment did not charge the commission of four distinct offenses. The charge was that "the defendant, Leslie E. Douglas, on or about the 26th day of May, A. D. 1900, in Churchill county, State of Nevada, unlawfully and feloniously did steal, take and drive away one roan steer, * * * the property of Henry Thelan," and continues with a description of each animal stolen, with its respective value and ownership. The stealing of the various cattle constituted but one offense. The indictment is in the exact language of the statute, and that had been repeatedly held sufficient. The stealing of different articles at the same time and place constitutes but one crime. (*State* v. *Ward*, 19 Nev. 297.) It

would seem that the stealing of property of different persons at the same time and place and by the same act may be prosecuted at the pleasure of the government as one offense or several distinct offenses. (*State* v. *Lambert*, 9 Nev. 324; *Commonwealth* v. *Sullivan*, 104 Mass. 552; *State* v. *Thurston*, 2 McMul. 382.) Our conclusion is that the stealing of different articles of property, belonging to different persons at the same time and place, so that the transaction is the same, is but one offense against the state, and that the accused cannot be convicted on separate indictments charging different parts of one transaction as a distinct offense. A conviction on one bars a prosecution of the other. (2 Graham & W. on New Trials, 5455; *Nelson* v. *State*, 45 Tex. 77.) If goods of several persons are stolen at the same time, the circumstance of different ownerships does not change the offense, in contemplation either of law or morality, and that, if there be but one transaction, there should be but one indictment, there being but one felony, every branch of which is punishable by one prosecution, one indictment and one sentence. (3 Chitty Cr. Law, 960; 4 Carrington & Pyne, 386.) Where the larceny consists of but a single act, and the goods stolen belong to different persons, it is unnecessary that there should be different indictments. (*Hoiles* v. *U. S.*, 3.McAr. D. C. 370.)

II. Demurrer not sufficient. Counsel for appellant, in his brief, argues, because of the failure of the indictment to allege that the taking of the cattle was "at the same time and place and that it was the same act," that it is therefore invalid. If such argument were tenable, the appellant certainly cannot be heard in this court for the first time, because the point was not presented on demurrer. The statute says that the demurrer must distinctly specify the grounds of objection to the indictment, or it shall be disregarded. (*State* v. *Ah Sam*, 7 Nev. 127.)

III. It has been held by this court that a motion to strike out all the testimony of a witness, where a portion thereof is admissible, the motion should be denied. (*State* v. *Hymer*, 15 Nev. 53.)

IV. There is nothing in the testimony to confirm the theory of the appellant—that Joe King was a coconspirator. An examination of the record will show that he was a duly

appointed officer of the law, specially detailed to capture a
criminal, with an honest purpose of bringing him to justice.
Admitting that he counseled and encouraged the commission
of the offense by a person about to offend the law, if he did
so with an honest intention to have him discovered and pun-
ished, his testimony is therefore not to be treated as that
of an infamous prisoner.   (*Campbell* v. *Com.,* 84 Pa. St. 187;
*Wright* v. *State,* 7 Tex. App. 574.)

*F. M. Huffaker,* also for Respondent:

I.   "The stealing of the property of different persons at
the same time and place and by the same act may be prose-
cuted at the pleasure of the government as an offense or as
several distinct offenses."   (*State* v. *Lambert,* 9 Nev. 321.)
"The stealing of different articles at the same time and place
constituted but one crime."   (*State* v. *Ward,* 19 Nev. 297.)

II.   The witness King was not a coconspirator in any
sense of the word with defendant, in the larceny of those
cattle, nor is there any conspiracy alleged in the indictment.
Wharton, sec. 698, 9th edition of his Criminal Evidence,
lays down this rule:   "In case of crimes perpetrated by sev-
eral persons, when once the conspiracy or combination is
established, the act or declaration of one conspirator, or
accomplice in the prosecution of the enterprise, is considered
the act or declaration of all; and therefore imputable to all.
*   *   *   A foundation, however, must first be laid *aliunde,*
by proof sufficient, in the opinion of the court, to establish
*prima facie* the fact of conspiracy between the parties; the
question of such conspiracy being ultimately for the jury."
No such question was involved in this case.   "The proof of
mere cognizance, with active cooperation, is not enough to
prove a conspiracy."   (*Evans* v. *People.* 90 Ill. 384.)   "An
accomplice is a person who, knowingly, voluntarily, and
with common intent with the principal offender, unites in
the commission of a crime."   (Wharton, Crim. Ev., 9th ed.
sec. 440.)

III.   An informer or decoy is not a coconspirator or accom-
plice, and while the defendant may ask the court to instruct
the jury that the testimony of such persons as witnesses
should be closely scrutinized, yet they are always competent,

and anything said to them by the defendants at any time concerning his connection with the offense charged can be given in evidence, because such a person is but a feigned coconspirator or accomplice.   In all such cases the testimony is admissible, the credibility of the witness being left to the jury.   (*Wright* v. *State*, 7 Tex. App. 574; *State* v. *McKean*, 26 Iowa, 343; *People* v. *Farrell*, 30 Cal. 316; *Com.* v. *Elliott*, 101 Mass. 104; *Com.* v. *Ford*, 111 Mass. 394.)   This witness, Joe King, was appointed a deputy sheriff by the sheriff of Lyon county, and directed by the sheriff to get in with the defendant and ascertain about his supposed theft of beef cattle; this is the purport of the testimony, conclusively showing that King was acting throughout this transaction as a detective, and the question of his credibility was properly left by the court to the jury.

IV.   If a jury believe from the testimony of an accomplice, who may have been induced to make disclosures from remorse, or from any motive, why should they not be allowed to credit him?   Is he in a position different from any other witness whose credibility is to be inquired into?   We can see no real difference.   *   *   *   "The tendency with us at present is to arbitrarily exclude as little as possible, but to listen and give credence to whatever tends to establish the truth.   The innocent should not be convicted, nor should the guilty escape punishment, by reason of any merely arbitrary rule preventing the free and full exercise of the judgment as to the truthfulness or untruthfulness of testimony, and the reliance to be placed upon it in the trial of cases.   In many, probably in most, cases the evidence of an accomplice, uncorroborated in material matters, will not satisfy the judgment beyond a reasonable doubt, and then it is clearly insufficient to authorize a verdict of guilty."   (*Collins* v. *People*, 98 Ill. 584.)   This is the rule where the witness is unquestionably a coconspirator, or accomplice in crime, with the defendant; in such case the legislature has said that the testimony must be corroborated.

V.   In addition to the character of errors in questions of law set forth, there is another the defendant seems to rely on—that is the insufficiency of the evidence to sustain the judgment of the court or warrant the verdict of the jury.

This in the criminal law goes to the extent only: Is there legal evidence in favor of the verdict and judgment? If there is, then there is no question of law as to this before this court, and the judgment and verdict will not be interfered with. (*State* v. *McInnis*, 6 Nev. 109.)

By the Court, MASSEY, C. J.:

The appellant was charged with the crime of grand larceny, was tried and convicted thereof, and sentenced to imprisonment in the state prison for a term of ten years. He appeals from the judgment and the order denying his motion for a new trial.

1. He complains that the court erred in overruling his demurrer to the indictment. The specific objection made by the demurrer is that the indictment charges four distinct larcenies. At the proper time he asked the court that the state be directed to elect as to which of the offenses charged he should be placed upon his trial. This request was refused, and the refusal of the court is assigned as error. As the action of the court in overruling the demurrer and in refusing to direct the state to elect involves the same question, the assignments may be properly considered together.

The indictment charges that appellant, on or about the 26th day of May, 1900, at the county of Churchill, State of Nevada, unlawfully and feloniously did steal, take, and drive away a particularly described steer, of certain alleged value, the property of Henry Thelan; certain other particularly described cattle, of certain alleged value, the property of Lee Wightman; certain other particularly described cattle, of certain alleged value, the property of W. F. Kaiser; and certain other particularly described cattle, of certain alleged value, the property of J. M. Douglass.

If the language used in this indictment charges four distinct larcenies, then, under the provisions of our criminal practice act (Comp. Laws, 4203), appellant's contention is tenable, and the demurrer should have been sustained, and the request for the election should have been granted.

This court has intimated that the stealing of property of different persons at the same time and place, and by the same act, may be prosecuted, at the pleasure of the state, as one

offense or several distinct offenses. (*State* v. *Lambert*, 9 Nev. 324.)

While the authorities bearing upon the rule that such larceny may be prosecuted as one offense are not uniform, yet we are of the opinion that the weight of authority, considered with reference to reason and with the statute defining larceny, is against the claim of appellant.

In a strong and well-reasoned case, in which a large number of authorities are collected and cited against appellant's contention, the Supreme Court of Indiana uses the following language, which we quote with approval: "We recognize no good reason to depart from what may be considered the great current of authority, and hold the pleading in question bad, when it can reasonably be said that it discloses that the larceny complained of was but a single act or transaction in violation of the law against larceny, although the property which was the subject of the crime belonged to several different persons. The particular ownership, as charged in the pleading, of the money stolen, did not give character to the act of stealing, but was merely a part of the description of the particular crime charged to have been committed. The information, *prima facie*, under the circumstances, can be said to charge but one offense against the state, and is not open to the objection that it is bad for duplicity." (*Furnace* v. *State*, (Ind. Sup.) 54 N. E. 441.)

This is a later case than *Joslyn* v. *State*, 128 Ind. 160, cited by appellant, and overrules that case.

It seems to us that the language used in the indictment in the case at bar, charging the defendant, at the same time and place, with having stolen the property of different persons, charges but one offense, one act or transaction in violation of law, and fills the measure required by the sixth subdivision of Section 243 of the criminal practice act (Comp. Laws, 4208), by which an indictment is declared sufficient when the act charged is clearly and distinctly set forth in ordinary and concise language without repetition, and in such manner as to enable a person of common understanding to know what is intended. Not only does the indictment sufficiently charge one act of larceny by which the property of different persons was taken, but the evidence submitted to the jury shows that

there was but one offense committed. The witness King, to whom appellant made his confession while still in possession of part of the stolen property, testified that appellant stated to him that he rode down in the night and sorted out of a band of cattle the eighteeen head, and drove them away.

2. During the progress of the trial one Joe King was called as a witness, and testified to a confession made to him by appellant. The appellant asked the court to strike the testimony given by King from the record, for the reason that it appeared that King was a coconspirator in the commission of the crime charged. The refusal of the court to strike out is assigned as error. The record does not show that the witness was a "coconspirator," within the meaning of that term. He did not participate in the criminal act, and did not suggest or plan it. It does show that the appellant planned and committed the crime. It further shows that he suggested the commission of the crime to the witness, who had, in anticipation of some such suggestion, been appointed a deputy sheriff by the sheriff of Lyon county, and was acting as such, without the knowledge of the appellant, when appellant invited him to join in the commission of the crime of larceny; that the witness consented to join in the offense, but did not, and kept his principal, the sheriff, fully informed as to what was transpiring between him and appellant.

It also shows that all that was done or said by the witness was without criminal purpose or intent. He was not, under the facts shown, either a coconspirator or accomplice, and his evidence should not be treated as such. (*Campbell* v. *Com.*, 84 Pa. 187; *Wright* v. *State*, 7 Tex. App. 574; *People* v. *Farrell*, 30 Cal. 316.)

But, if it were even shown or admitted that the witness King was an accomplice, that fact does not render him incompetent to give testimony under our statute (Comp. Laws, 4667).

The weight to be given to his testimony is a question for the jury, under proper instructions, subject, however, to the statutory restriction (Comp. Laws, 4330) that a conviction cannot be had upon the uncorroborated testimony of such accomplice. It was not error, therefore, to refuse to strike out the testimony of King.

3.   The appellant requested the court to instruct the jury that the officers of the law should never encourage and assist parties to commit crime, in order to arrest and have them punished for so doing; that it is their duty to prevent crime, instead of lending aid and encouragement in carrying it out, and in this case the officers of the law, instead of laying a plan to have defendant commit the crime as charged, if the jury believed from the evidence that they did lay such plan, should have taken all steps in their power to prevent the commission of the offense.   The refusal of the court to give this instruction is assigned as error.

It is settled by the decisions of this court that it is not error to refuse instructions, if there is no evidence before the jury making them applicable, even though such instructions contained correct statements of the principles of the law. (*State* v. *Waterman*, 1 Nev. 543; *State* v. *Squaires*, 2 Nev. 226; *State* v. *Ah Loi*, 5 Nev. 99.)

It is sufficient, without passing upon the correctness of the rule of law contained in the instruction asked, to say that this instruction was not applicable to the facts of the case at bar. .We believe the evidence shows conclusively that neither the sheriff nor his deputy suggested the commission of the crime. It further shows that neither of these officers assisted in the commission of the crime, and that whatever plan was laid for the commission of the theft was solely and exclusively the plan of the appellant, and by him alone carried into effect.

4.   Whether or not there is any merit in the claim that the court erred in refusing to give the instruction relating to the testimony of detectives is not before us.   It appears from the action of the court in refusing to give the instruction that it had been given in substance, and the record fails to affirmatively show that such was not the fact.   Whatever instructions were given by the court are not properly brought here, and under the rule announced in *State* v. *Maher*, 25 Nev. 465, there is nothing for us to consider.

5.   We cannot consider the objections to instructions given by the court.   These instructions, not having been embodied in the bill of exceptions, are no part of the record.   (*State* v. *Forsha*, 8 Nev. 137; *State* v. *Burns*, 8 Nev. 251; *State* v. *Rover*, 11 Nev. 343; *State* v. *Maher*, 25 Nev. 465.) .

No error having been shown, the judgment and order will be affirmed.